# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | | |
|---|---|---|---|
| BRENDA WASHINGTON, | ) | | |
| | ) | | |
| Plaintiff, | ) | Case No. 14-cv-3854 | |
| | ) | | |
| v. | ) | Judge Robert M. Dow, Jr. | |
| | ) | | |
| PORTFOLIO RECOVERY | ) | | |
| ASSOCIATES, LLC and FREEDMAN | ) | | |
| ANSELMO LINDBERG, LLC, | ) | | |
| | ) | | |
| Defendants. | ) | | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the parties' cross-motions for summary judgment on Count I of Plaintiff's complaint, which alleges violations of the Fair Debt Collection Practices Act. See [75] and [89]. For the reasons explained below, the Court grants in part and denies in part Plaintiff's motion [75] and grants in part and denies in part Defendants' motion [89]. Summary judgment is granted in favor of Plaintiff and against Defendants on Plaintiff's claim that Freedman's March 20, 2014 wage deduction notice violated 15 U.S.C. § 1692c(a)(2). Summary judgment is granted in favor of Defendants and against Plaintiff on (1) Plaintiff's claim that Defendant Freedman's February 13, 2014 letter to Plaintiff's counsel violated 15 U.S.C. §§ 1692e, 1692e(5), 1692(e)(10), 1692f and 1692f(1); and (2) Plaintiff's claim that Defendant Freedman's March 20, 2014 wage deduction notice violated 15 U.S.C. §§ 1692e, 1692e(5), 1692(e)(10), 1692f and 1692f(1).

Count II of Plaintiff's complaint, a claim against Defendant Freedman for abuse of process, remains pending. This case is set for status hearing on October 19, 2016 at 9:00 a.m.

## I.    Background

The following facts are drawn primarily from the parties' Local Rule 56.1 statements, [75-2], [90], [94-1], and [94-2], and are undisputed unless otherwise noted.

Plaintiff Brenda Washington ("Plaintiff") obtained a GE Capital Retail Bank credit card branded as a Lord & Taylor credit card (the "Card"). See [90] at 5. According to her declaration and deposition testimony, Plaintiff used the Card to buy clothing for her personal use and did not use the Card for business purposes. [90] at 6; [75-6] at 3; [76-1] at 101. In approximately July 2013, Plaintiff lost her job and was unemployed for the next year and a half. Plaintiff did not keep up with the payments on the Card and Plaintiff's account went into default and was charged off. [90] at 5-7.

Defendant Portfolio Recovery Associates, LLC ("PRA") purchased the alleged debt after it entered default. PRA is licensed as a collection agency in Illinois and, in certain circumstances, acts as a "debt collector" as defined by the FDCPA. [90] at 2-3. PRA retains Defendant Freedman Anselmo Lindberg, LLC ("Freedman"), an Illinois law firm, to collect outstanding balances on accounts on its behalf, including on consumer accounts. [90] at 4. Freedman is also, in certain circumstances, a "debt collector" as defined by the FDCPA. [90] at 4.

PRA hired Freedman to collect Plaintiff's outstanding debt on the Card. [90] at 5, 7. The retainer agreement ("Retainer Agreement") between PRA and Freedman provides that Freedman "may not adjust any Account Balance at any time to include additional finance charge(s) or other fees and charges, with the exception of allowable pre-judgment and post-judgment interest, court costs incurred, and attorneys' fees awarded by a court on the court's own volition without a request made by Attorney." [90] at 8 (quoting [76-3] at 8, ¶ 2(i)). The parties dispute whether

the Retainer Agreement allows the imposition of late charges. Defendants take the position that the Retainer Agreement "would support charges ordered by the Court." [90] at 12. They cite the deposition testimony of Barbara Nilsen, who was formerly a Freedman attorney, that such charges would "[p]ossibly" include late charges "if the Court [awarded such charges] on its own volition." [79] at 14.

The Retainer Agreement also provides that Freedman shall, "[a]fter reasonable notice, provide to PRA all letters, notices, forms, scripts or other forms of communication with PRA customers for PRA's approval, which may be withheld or granted in PRA's sole discretion." [90] at 9-10 (quoting [76-3] at 8, ¶ 2(g)). Further, the Retainer Agreement requires Freedman to "establish and maintain internal policies and procedure documents for the process of receiving, collection, litigating, processing payments and maintaining PRA accounts" and to "perform the services as counsel for PRA using [Freedman's] reasonable professional judgment." [76-3] at 7-8, ¶¶ 2(a), (j).

At the end of October 2013, Freedman, acting on behalf of PRA, filed a complaint against Plaintiff in the Circuit Court of Cook County, Illinois (Case No. 13-M1-159783) to collect the debt (the "State Action"). [90] at 8. On December 17, 2013, the Cook County Circuit Court entered a default judgment against Plaintiff in the amount of $803.60 with costs assessed. [90] at 9.

Plaintiff consulted with attorneys at the Debtors Legal Clinic about the State Action. On December 27, 2013, one of Debtors Legal Clinic's attorneys, Andrew Finko, sent Freedman a letter stating that he was representing Plaintiff in the State Action and that Plaintiff "disputes this debt and intends to fully participate in the case." [90] at 9. Plaintiff's attorneys entered appearances in the State Action on January 14, 2014. At the same time, they filed a motion to

vacate the default judgment that had been entered against Plaintiff. [90] at 9. Plaintiff's attorneys never served Defendants with their appearances, the notice of motion to vacate, or the motion to vacate. [94-1] at 1.

Around February 13, 2014, Freedman mailed a letter to Plaintiff's counsel regarding Plaintiff's account. The letter stated:

> Pursuant to your request, we enclose a copy of the contract and/or payment history and/or supporting documentation to validate this particular issue. Please note that the original creditor is GE CAPITAL RETAIL BANK at PC BOX 960061, ORLANDO, FL 32896-0061, my client now the assignee of this particular creditor. After your review, I invite you to contact our office in hopes of amicable resolution of this matter without further inconvenience to your client.

> Further, as of the date of this letter, the balance claimed is $1,035.60. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day your client may pay could be greater. Hence, if your client pays the amount shown above, an adjustment may be necessary after we receive your client's check, in which event we will inform you before depositing the check for collection. It is important that you contact this office regarding this account. [94-1] at 2.

On March 5, 2014, the Cook County Circuit Court granted Plaintiff's motion to vacate the default judgment that had been entered against her. [90] at 11. Plaintiff's attorneys never served Defendants with the order vacating the default judgment. [94-1] at 1.

On March 7, 2014, PRA communicated to the Equifax consumer reporting agency that Plaintiff had a balance of $804. [90] at 12.

On March 20, 2014, Freedman sent to Plaintiff (rather than to her attorney) a Wage Deduction Notice. [90] at 12-13. Defendants acknowledge that, as of this date, Freedman knew that Plaintiff was being represented by counsel. [90] at 14. The Wage Deduction Notice informed Plaintiff that there was a judgment against her in the amount of $803.60 [1-1] at 23; however, at the time Freedman sent the Wage Deduction Notice, the default judgment against Plaintiff had already been vacated by the Cook County Circuit Court. [90] at 14. The Wage

Deduction Notice also informed Plaintiff that her balance due was $1,102.93, and that the Cook County Circuit Court had issued a wage deduction summons against her employer. [1-1] at 23. The balance due consisted of the judgment amount, interest, and court costs. [90] at 13. According to Plaintiff, at the time she received the notice she was undergoing treatment for cancer and she became alarmed that she would not be able to afford her cancer treatments and that she could lose her job as a result of the garnishment. [90] at 14-15.

According to Defendants, on March 21, 2014, Freedman learned for the first time that the default judgment had been vacated. [94-1] at 1-2. Freedman learned this information when it received notice from an attorney at another law firm that had received the Court's order in error. [94-1] at 2.

On May 23, 2014, Plaintiff filed the instant lawsuit alleging claims for violation of the Fair Debt Collection Practices Act ("FDCPA"). See [1]. First, Plaintiff alleged that Freedman's February 13, 2014 letter falsely represented to Plaintiff's attorney that "late charges" could increase the total balance that Plaintiff owed, even though "there was no legal possibility that such charges could be added," in violation of 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), and 1692f(1). Second, Plaintiff alleged that Freedman's March 20, 2014 Wage Deduction Notice violated the FDCPA because (A) it was mailed directly to Plaintiff rather than to her attorney, in violation of 15 U.S.C. § 1692(a)(2); and (B) it falsely represented that there was a judgment against Plaintiff and that her wages could be garnished, in violation of 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692(e)(10). Plaintiff's complaint also includes a claim against Freedman for abuse of process.

Currently before the Court are the parties' cross-motions for summary judgment on Plaintiff's FDCPA claims.

## II.    Legal Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party's assertion that a fact cannot be or is genuinely disputed must be supported by the materials in the record, including but not limited to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, [and] interrogatory answers."  Fed. R. Civ. P. 56(c)(1).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact.  See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The Court "must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013) (citation and internal quotation marks omitted).  Where, as here, the parties have submitted cross-motions for summary judgment, the Court "take[s] the motions one at a time, construing all facts and drawing all reasonable inferences in favor of the non-moving party." *Black Earth Meat Mkt., LLC v. Vill. of Black Earth*, -- F.3d --, 2016 WL 4468085, at *4 (7th Cir. Aug. 24, 2016).

To avoid summary judgment, the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 250.  Summary judgment is proper if the nonmoving party "'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Ellis v. CCA of Tennessee LLC,* 650 F.3d 640, 646 (7th Cir. 2011) (quoting *Celotex,* 477 U.S. at 322).  The non-moving party "must do more than simply

show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

In the typical FDCPA case, whether a debt collector's communication is false, deceptive, or misleading is evaluated "through an objective standard of the 'unsophisticated consumer.'" *Simkus v. Cavalry Portfolio Services, LLC*, 12 F. Supp. 3d 1103, 1107 (N.D. Ill. 2014) (quoting *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 564 (7th Cir. 2004)). This standard assumes that the debtor is "uninformed, naïve, or trusting," but nonetheless possesses "rudimentary knowledge about the financial world" and is "capable of making basic logical deductions and inferences." *Fields*, 383 F.2d at 564; see also *Evory v. RJM Acquisitions Funding LLC*, 505 F.3d 769, 774 (7th Cir. 2007) ("in deciding whether for example a representation made in a dunning letter is misleading the court asks whether a person of modest education and limited commercial savvy would be likely to be deceived").

However, "the 'unsophisticated consumer' standard is not appropriate when evaluating whether communications made to a *debtor's lawyer* violate[] the FDCPA." *Owens v. LVNV Funding, LLC*, -- F.3d --, 2016 WL 4207965, at *6 (7th Cir. Aug. 10, 2016) (emphasis in original). An allegedly *deceptive* or *misleading* communication made to a lawyer is not actionable if it is "unlikely to deceive a competent lawyer, even if he is not a specialist in consumer debt law." *Evory*, 505 F.3d at 775. By contrast, "[a] *false* claim in a dunning letter *may* be as difficult for a lawyer to see through as a consumer." *Id.* (second emphasis added). For example, if "the letter misrepresents the unpaid balance of the consumer's debt," the "lawyer

might be unable to discover the falsity of the representation without an investigation that he might be unable, depending on his client's resources, to undertake." *Id.*; see also *Bravo v. Midland Credit Mgmt., Inc.*, 2014 WL 6980438, at *5 (N.D. Ill. Dec. 9, 2014) ("false claims of fact *may,* not *must,* be as difficult for a lawyer to see through as for a debtor" (citing *Evory*, 505 F.3d at 775) (emphasis in *Bravo*)).

The court treats "the question of whether an unsophisticated consumer would find certain debt collection language misleading as a question of fact." *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012). In "cases in which the allegedly offensive language is plainly and clearly not misleading[,] no extrinsic evidence is needed to show that the reasonable unsophisticated consumer would not be confused by the pertinent language." *Id.* On the other end of the spectrum, in "cases involving letters that are plainly deceptive or misleading," no "extrinsic evidence [is required] in order for the plaintiff to be successful." *Id.* Falling in between these two categories, in cases in which "debt collection language . . . is not misleading or confusing on its face, but has the potential to be misleading to the unsophisticated consumer[,] plaintiffs may prevail only by producing extrinsic evidence, such as consumer surveys, to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive." *Id.* In other words, "when the letter itself does not plainly reveal that it would be confusing to a significant fraction of the population, the plaintiff must come forward with evidence beyond the letter and beyond his own self-serving assertions that the letter is confusing in order to create a genuine issue of material fact for trial." *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 415 (7th Cir. 2005); see also *Acik v. I.C. Sys., Inc.*, 640 F. Supp. 2d 1019, 1023 (N.D. Ill. 2009).

### III. Analysis

#### A. Whether Plaintiff Used The Card for Personal Purchases, Such That The Debt She Incurred Is Subject to The FDCPA

Defendants argue in their response to Plaintiff's Rule 56.1 statement that Plaintiff has failed to present any evidence that the obligation Plaintiff incurred on the Card was primarily for personal, family, or household purposes, which is a prerequisite to establishing (1) that the obligation qualifies as a consumer "debt" under the FDCPA; and (2) that Defendants are "debt collectors" as defined by the FDCPA. See [90] at 2-4.

The Court is not persuaded by this argument because it ignores Plaintiff's deposition testimony and sworn declaration that she used the Card to purchase clothing for her personal use and not for business purposes. See [90] at 6; [75-6] at 3; [75-8] at 2; [76-1] at 101. Plaintiff has personal knowledge of how she used the Card and her testimony and statement are competent evidence of the same. Defendants have not cited any case law suggesting that more is required, nor have they presented any evidence of their own that Plaintiff did not use the Card for personal, family, or household purposes. Therefore, the Court rejects Defendants' argument that Plaintiff cannot establish the necessary prerequisites for bringing a claim under the FDCPA.

#### B. Whether Freedman's February 13, 2014 Letter to Plaintiff's Counsel Violates The FDCPA, 15 U.S.C. §§ 1692e, 1692e(5), 1692(e)(10), 1692f and 1692f(1)

15 U.S.C. §§ 1692e, 1692e(5), and 1692(e)(10) prohibit the use of "any false, deceptive, or misleading representation or means in connection with the collection of debt," including "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken," and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. §§ 1692f and 1692f(1) prohibit "[a] debt collector [from] us[ing] unfair or unconscionable means to collect or attempt to collect any

debt," including "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

Plaintiff argues that Freedman's February 13, 2014 letter to Plaintiff's counsel—and particularly its statement that "[b]ecause of interest, *late charges*, and other charges that may vary from day to day, the amount due on the day your client may pay could be greater"—violates all of these provisions because, "at the time the letter was sent, there were no circumstances under which Plaintiff could owe or Defendants could impose additional 'late charges' on the debt." [75-1] at 8. According to Plaintiff, (1) Illinois law does not allow for contractual late charges to be imposed on judgments, due to operation of the merger doctrine, see *Poilevey v. Spivack*, 857 N.E.2d 834 (1st Dist. 2006); and (2) even if Plaintiff's debt had not already been reduced to judgment at the time the letter was sent, Defendants concede that there is no governing contract that would support the imposition of late fees. [75-1] at 8-9. According to Plaintiff, Freedman's statement is deceptive even under the stricter "competent lawyer" standard because 1) "a reasonably competent attorney would not be aware of whether an agreement, or specific statute that applies to post-judgment collection, could support the collection of late charges"; and 2) a client's attorney "cannot be expected to know whether the debt was even reduced to judgment." [75-1] at 13.

Defendants respond that the February 13, 2014 letter was not false, deceptive, or misleading because, according to Freedman's corporate representative, Illinois courts have imposed late charges in collection actions. Specifically, Barbara Nilsen testified at her deposition that, for example, "[w]e have had sanction orders entered where if they were not paid within a time, the sanction order would increase." [79] at 13. Defendants also argue that a

10

competent lawyer would not be confused by the February 13, 2014 letter because "a competent lawyer . . . would be able to determine the amount his client owed and the reasons for why it may increase" and there is no proof that Plaintiff's lawyer was actually deceived by the letter. [89] at 11. In addition, Defendants argue that they are insulated from Plaintiff's claims because their letter used the "safe harbor" language announced in *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000), to state the balance that Plaintiff owed and the fact that it could be higher at the time payment was ultimately made.

The Court first considers whether Freedman's statement that late charges may increase Plaintiff's total balance was false, deceptive, or misleading. None of the parties discuss the legal meaning of the term "late fees" or whether that term should be limited to fees imposed pursuant to the debtor's agreement with the creditor, or could also include certain types of penalties or costs imposed by a court on a debtor based on the debtor's untimely action. Ms. Nilsen's testimony, which Plaintiff does not address, suggests that Defendants believe that a court may sua sponte impose penalties on debtors that should be considered equivalent to late charges. Defendants have not, however, identified any specific cases in which that was done or any rules or case law that would authorize a court to impose late fees.

Ultimately, the Court finds it unnecessary to resolve this issue because it agrees with Defendants that Plaintiff has failed to meet her burden to demonstrate that a competent attorney would be misled or deceived by the February 13, 2014 letter's reference to late fees. This statement is not false on its face, because it does not definitively say that Defendants have a right to or will impose late fees on Debtor's balance. At most, the statement is potentially—but not plainly—deceptive or misleading, and therefore the stricter "competent attorney" standard applies, *Evory*, 505 F.3d at 775, and Plaintiff "must come forward with evidence beyond the

letter and beyond his own self-serving assertions that the letter is confusing in order to create a genuine issue of material fact for trial." *Durkin* 406 F.3d at 415; see also *Ruth v. Triumph Partnerships*, 577 F.3d 790, 800 (7th Cir. 2009); *Williams v. OSI Educ. Servs., Inc*., 505 F.3d 675, 678 (7th Cir. 2007). In this case, Plaintiff has not come forward with any extrinsic evidence, such as a survey, indicating that Freedman's statement concerning late fees would be confusing to a competent attorney. See *Lox*, 689 F.3d at 822. Therefore, the Court concludes that Defendants are entitled to summary judgment on Plaintiff's claim that the February 13, 2014 letter violates §§ 1692e and 1692f of the FDCPA.

The Court finds it unnecessary to resolve Defendants' argument concerning the applicability of the *Miller* safe harbor language to claims brought under §§ 1692e and 1692f, but nonetheless notes that *Miller* supports the Court's conclusion that the letter's reference to late fees is not plainly misleading or deceptive. *Miller* concerned an alleged violation of the FDCPA's "amount of debt" provision, 15 U.S.C. § 1692g(a)(1), which provides that, "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall . . . send the consumer a written notice containing . . . the amount of the debt." The Seventh Circuit held that "the following statement satisfies the debt collector's duty to state the amount of the debt in cases . . . where the amount varies from day to day: 'As of the date of this letter, you owe $___ [the exact amount due]. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call 1–800–[phone number].'" *Miller*, 214 F.3d at 876.

The *Miller* court explained that "[a] debt collector who uses this form will not violate the amount of the debt provision, provided, of course, that the information he furnishes is accurate and he does not obscure it by adding confusing other information (or misinformation)." *Id.* Subsequently, in *Chuway v. Nat'l Action Fin. Servs., Inc.*, 362 F.3d 944, 949 (7th Cir. 2004), which also involved a claim under 15 U.S.C. § 1692g, the Seventh Circuit explained that a debt collector "should use the safe-harbor language of Miller" when it "is trying to collect the listed balance plus the interest running on it or other charges."

Plaintiff argues, based on *O'Chaney v. Shapiro & Kreisman, LLC*, 2004 WL 635060, at *4 (N.D. Ill. Mar. 29, 2004), that the *Miller* safe harbor is inapplicable to Plaintiff's claims under §§ 1692e and 1692f because it addressed only claims brought under § 1692g's "amount of debt" provision. In *O'Chaney*, the debtors argued that a debt collector's collection notice was unconscionable in violation of § 1692f because the "placement of the sentence, '[f]or further information, call (847) 498–9990' at the end of the collection letter overshadowed the debt collector's responsibility to inform them that a debt must be disputed in writing." 2004 WL 635060, at *4. Judge Gottschall denied the debt collector's motion to dismiss based on the *Miller* safe harbor language, both because the debt collector's letter did not track the safe harbor language and because "[t]he *Miller* court expressly limited the reach of its 'safe harbor' language to claims brought under a different section of the FDCPA." *Id.*

While the Court agrees that the *Miller* safe harbor was fashioned specifically for § 1692g "amount of debt" claims, it nonetheless finds *Miller* instructive in evaluating Plaintiff's claims under §§ 1692e and 1692f. Unlike in *O'Chaney*, Freedman's February 13, 2014 letter tracks the safe harbor language nearly verbatim. Further, the specific language that Plaintiff challenges— the reference to "late charges"—is prescribed by the Seventh Circuit when a debtor wishes to

make clear that, in addition to the listed balance, the debt may be greater at the time the payment is made. Plaintiff does not dispute that Defendants had a right to seek at least *some* amounts on top of the balance—particularly, post-judgment interest and costs. And Plaintiff's claims under §§ 1692e and 1692f are based on Freedman's alleged misstatement of the "amount of debt" that Plaintiff owed—an amount that Plaintiff argues could not include any late fees. The Court concludes that it would be inappropriate to hold that Defendants violated §§ 1692e and 1692f where they used the precise language that the Seventh Circuit has instructed creditors to use in cases where, as here, the debt collector "is trying to collect the listed balance plus the interest running on it or other charges." *Chuway*, 362 F.3d at 949; see also *Tilmon v. LVNV Funding, LLC*, 2014 WL 335234, at *3 (S.D. Ill. Jan. 30, 2014) (at summary judgment, *Miller* safe harbor applied to a claim brought under § 1692e(2)). For these reasons, the Court grants summary judgment in favor of Defendants and against Plaintiff on Plaintiff's claim that Freedman's February 13, 2014 letter violated §§ 1692e, 1692e(5), 1692(e)(10), 1692f and 1692f(1).

### C.      Whether Freedman's Wage Deduction Notice Violates The FDCPA

#### 1.      Whether Wage Deduction Notices Are Subject to the FDCPA

Defendants argue that the Wage Deduction Notice is not subject to the FDCPA because a wage garnishment action is not a legal action to collect debt from a consumer, as defined by the FDCPA. Defendants cite to several cases from this district which held that a wage garnishment is not considered to be an action against a consumer and, therefore, that the FDCPA's venue requirements do not apply wage garnishment actions. See [89] at 22-23.

The Court concludes that Defendants have not met their burden of persuasion on this defense because this case does not involve any venue issues and Defendants fail to tie their argument to the particular FDCPA claims alleged by Plaintiff. Moreover, the Court's

independent research indicates that claims for violation of §§ 1692e and 1692f have been brought based on wage garnishment notices that allegedly use false, deceptive, misleading, or unfair or unconscionable means to collect debt. See *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 536 (7th Cir. 2005); see also *Collins v. Erin Capital Management, LLC*, 991 F. Supp. 2d 1195, 1212 (S.D. Fla. 2013).

**2.    Whether Defendants Violated 15 U.S.C. §§ 1692e, 1692e(5), 1692(e)(10), 1692f and 1692f(1) By Sending the Wage Deduction Notice**

15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692(e)(10) provide that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," including specifically any "false representation of . . . the character, amount, or legal status of any debt," any "threat to take any action that cannot legally be taken or that is not intended to be taken," or any "false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

Plaintiff argues that the wage deduction notice that Freedman sent to Plaintiff on March 20, 2014—in which Freedman stated that there was a judgment against Plaintiff in the amount of $803.60 and that her wages would be garnished—was false and violated all of the foregoing provisions. According to Plaintiff, the judgment had been vacated before the notice was sent, and in the absence of a judgment against Plaintiff, her wages could not legally be garnished.

Defendants respond that the wage deduction notice was sent as a result of a bona fide error because at the time it was sent, Defendants had not received notice that the default judgment against Plaintiff had been vacated. Defendants assert that Freedman maintains reasonable procedures when attempting to garish a consumer's wages, namely, checking its file to determine whether there is a valid judgment against the consumer and whether the judgment

has been vacated.  Further, if Freedman has already sent the garnishment to the court to be filed, and then discovers that the judgment has been vacated, Freedman makes a notation of "SF" on its account, which will prevent the garnishment notice from being mailed to the consumer's employer.  See [90] at 23, ¶¶ 22-25.

The Court concludes that Defendants are entitled, based on the bona fide error defense, to summary judgment on Plaintiff's claim that the wage deduction notice violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692(e)(10).   Pursuant to 15 U.S.C. § 1692k(c), "[a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  "To qualify for the bona fide error defense, a defendant must show that: (1) the FDCPA violation was not intentional; (2) the violation resulted from a bona fide error; and (3) the defendant maintained procedures reasonably adapted to avoid such error."  *Portalatin v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 125 F. Supp. 3d 810, 814 (N.D. Ill. 2015).

In this case, the undisputed evidence shows that Freedman did not receive notice of the order vacating the default judgment against Plaintiff until after Freedman had mailed the wage deduction notice.  Plaintiff has come forward with no evidence that Freedman intentionally sent out the wage deduction notice despite knowing that the judgment against Plaintiff had been vacated.  Freedman's alleged violations of §§ 1692e, 1692e(2), 1692e(5), 1692(e)(10) therefore resulted from a bona fide error: Freedman's good faith belief that there was a valid judgment against Plaintiff, which would have entitled Freedman to pursue wage garnishment.

Finally, the Court concludes that Freedman maintained procedures reasonably adapted to avoid such errors.  The undisputed evidence shows that Freedman's procedure was to check its

file before beginning wage garnishment to ensure that there was a valid judgment and that the judgment had not been vacated. The Court is not persuaded by Plaintiff's argument that Freedman could and should have checked the court's electronic docket to ensure that the judgment had not been vacated. Section "1692k(c) does not require debt collectors to take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution." *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 539 (7th Cir. 2005). It is undisputed that Freedman should have received notice of the order vacating the default judgment because it was a party to the case. It is also undisputed that Freedman did not receive timely notice due to a mailing error that was beyond Freedman's control. Additionally, Plaintiff does not address Defendants' argument that Freedman does not rely on the electronic dockets because they are not always accurate. Thus, while Freedman could have checked the electronic docket, this does not undercut the Court's conclusion that Freedman nonetheless takes "reasonable precaution[s]" to avoid mailing wage garnishment notices in cases in which the underlying judgments have been vacated. *Kort*, 394 F.3d at 539.

For these reasons, the Court concludes that Freedman is entitled to summary judgment on Plaintiff's claim that the wage deduction notice violated §§ 1692e, 1692e(5), 1692(e)(10), 1692f and 1692f(1). PRA is also entitled to summary judgment on this claim because the only basis for holding PRA liable would be vicariously through the actions of Freedman.

### 3. Whether Freedman Violated 15 U.S.C. § 1692c(a)(2) By Sending the Wage Deduction Notice

15 U.S.C. § 1692c(a)(2) provides that, "[w]ithout the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney with respect to

such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer."

Plaintiff argues that Defendants violated this provision when Freedman sent the wage deduction notice to Plaintiff because it is undisputed that, at the time the notice was sent, Freedman had actual knowledge that Plaintiff was represented by counsel. Defendant responds that the Illinois garnishment statute requires the wage deduction notice to be sent to the debtor at her "last known address," and thus interpreting § 1692c(a)(2) to require notice to be sent to the debtor's attorney "would render the FDCPA unconstitutional because it would directly contradict the Illinois Wage Deduction Act." [89] at 24 (quoting 735 ILCS 5/12-805). Defendants also assert that, to the extent that they did violation § 1692c(a)(2), they are protected by the bona fide error defenses because Freedman's "corporate representative testified that [Freedman] only sends court notifications and court pleadings to a consumer's attorney when that attorney has filed and served with [Freedman] an appearance for the state court collection cases." [89] at 30.

The Court concludes that Plaintiff is entitled to summary judgment on its claim that Freedman violated § 1692c(a)(2) by mailing the wage deduction notice to Plaintiff rather than to Plaintiff's attorney. (PRA's liability for this violation is discussed separately in the following section of the opinion.) The wage deduction notice was a communication "in connection with the collection of [a] debt," because it informed Plaintiff how Freedman intended to collect the debt by garnishing Plaintiff's wages. 15 U.S.C. § 1692c(a)(2). It is undisputed that at the time Freedman sent the notice, it had actual knowledge, based on Mr. Finko's December 27, 2013 letter, that Plaintiff was represented by counsel with respect to the State Action, "Portfolio Recovery v. Brenda Washington Cook County Court No. 13-M1-159783," that Plaintiff

"dispute[d] th[e] debt" involved in that action, and that Plaintiff "intend[ed] to fully participate in the case." [75-7] at 26. The letter also included Mr. Finco's address and phone number. See *id.* Therefore, the letter was sufficient to put Freedman on notice that Plaintiff was "represented by an attorney with respect to [the] debt" that was the subject of the State Action. 15 U.S.C. § 1692(a)(2).

Freedman's argument that it did not "know" that Plaintiff was represented by counsel due to Freedman's failure to serve its appearance on Freedman is unavailing in light of Mr. Finko's December 27, 2013 letter. It is easy to imagine a situation in which an attorney represents a debtor but does not have an official appearance on file; for instance, a debtor might hire an attorney before an official collection action had been brought in court. Reading section 1692c(a)(2) to require an official attorney appearance would ignore the plain meaning of the phrase "knows the consumer is represented by an attorney with respect to such debt." 15 U.S.C. § 1692(a)(2). "This Court assumes that the purpose of the statute is communicated by the ordinary meaning of the words Congress used; thus, the plain language is conclusive absent any clear indication of a contrary purpose." *Duffer v. United Cont'l Holdings, Inc.*, -- F. Supp. 3d --, 2016 WL 1213668, at *14 (N.D. Ill. Mar. 29, 2016). The only exceptions that § 1692c(a)(2) makes to the requirement that a debtor be contacted through counsel are where (1) the attorney fails to respond within a reasonable time; and (2) the attorney consents to the debt collector's direct communication with the client. 15 U.S.C. § 1692c(a)(2). If Congress also intended to make an exception for cases in which no formal attorney appearance had been filed, it could have added a third exception. "Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *Andrus v. Glover Const. Co.*, 446 U.S. 608, 616–17 (1980).

Moreover, Defendants do not cite any case law suggesting that an attorney appearance is required, and the Court's independent research confirms that violations of § 1692c(a)(2) have been found based on attorneys' more informal communications to debt collectors. See, e.g., *Buckley v. Afni, Inc.*, 133 F. Supp. 3d 1140, 1149-50 (S.D. Ind. 2016) (concluding on summary judgment that debt collector violated § 1692c(a)(2) when it directly communicated with consumer after being notified that she was represented by counsel, where it was undisputed that debt collector received letter from consumer's attorney stating that he was representing her for all debts and that after receiving letter debt collector directly sent consumer a collection letter; omission of consumer's account numbers from counsel's letter was irrelevant because it provided sufficient other information to associate letter with consumer's collection accounts, and bankruptcy notices received by debt collector showed she was represented by counsel); *Yarney v. Ocwen Loan Servicing, LLC*, 929 F. Supp. 2d 569, 579 (W.D. Va. 2013) (debt collector violated § 1692c(a)(2) by communicating directly with a consumer debtor, through collection letters and phone calls, after debtor's counsel left voicemail for debt collector requesting that it not contact consumer debtor directly and provided contact information to debt collector); *Tong v. Capital Mgmt. Servs. Grp., Inc.*, 520 F. Supp. 2d 1145, 1148 (N.D. Cal. 2007) (letter and attachment sent to debt collector by attorney representing cardholder contained enough information to provide collector notice that plaintiff was represented, for purposes of cardholder's FDCPA claim that collector violated act by sending collection notice to him directly rather than his attorney, even though cardholder's first name was not on the face of the attorney's representation letter, where the letter included the cardholder's address and account number, and attorney had attached debt collector's second notice to the letter).

The Court also is not persuaded by Defendants' argument that interpreting § 1692c(a)(2) to require notice to be sent to the debtor's attorney "would render the FDCPA unconstitutional" because the Illinois Wage Deduction Act requires notice to be sent to the debtor at her "last known address." [89] at 24 (quoting 735 ILCS 5/12-805). "Put simply, federal law preempts contrary state law" because "[t]he Supremacy Clause makes the laws of the United States 'the supreme Law of the Land.'" *Hughes v. Talen Energy Mktg., LLC*, 136 S. Ct. 1288, 1297 (U.S. 2016) (quoting U.S. Const., Art. VI, cl. 2). In addition, the FDCPA contains its own preemption clause, which provides that the FDCPA controls over state laws with respect to debt collection practices "to the extent that those laws are inconsistent with any provision" of the FDCPA. 15 U.S.C. § 1692n. While this provision recognizes that "a State law is not inconsistent with [the FDCPA] if the protection such law affords any consumer is greater than the protection provided by this subchapter," *id.*, that is not the case here. Section 1692c(a)(2) provides greater protection to consumers than the Illinois garnishment statute by preventing debt collectors from directly contacting debtors who have retained counsel.[1] Thus, to the extent that there is any conflict between the requirements of § 1692c(a)(2) and the Illinois garnishment statute, federal law would control. Cf. *McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, 911 F. Supp. 2d 1, 83-84 (D. Mass. 2012) (debt collector knowingly communicated with debtor who was represented by an attorney in connection with collecting debt, in violation of FDCPA, despite collector's contention that it was required to notify debtor of his delinquent common expenses as condominium unit owner under Massachusetts law, where collector knew of debtor's

---

[1] Defendants contend that the Illinois garnishment statue provides greater protection by protecting clients from incompetent attorneys who fail to pass on notices to their clients. But the FDCPA already protects debtors in such circumstances, by making an exception to § 1692c(a)(2) in cases where the attorney fails to respond within a reasonable time or authorizes the debt collector to contact the debtor directly.

representation by an attorney with respect to debt, collector sent letters directly to debtor, and state statute was inconsistent with § 1692c(a)(2)).

In this case, however, the Court concludes that there is not an irreconcilable conflict between the two statutes. The Illinois garnishment statute does not define "last known address" and Defendants do not cite any case law suggesting that this term has been limited to mean the debtor's home address, at least in cases where the debtor has informed the debt collector that she is represented by counsel and provides counsel's address. In cases where the debt collector has been notified that the debtor is being represented by counsel with respect to the debt, and knows counsel's address, it does not seem unreasonable to interpret "last known address" to mean the debtor's attorney's address. For these reasons, the Court concludes that Freedman violated § 1692c(a)(2) by sending the wage deduction notice to Plaintiff rather than to Plaintiff's counsel.

Finally, the Court concludes that the bona fide error defense does not insulate Defendants from liability. Defendants admit that Freedman intentionally sent the wage deduction notice to Plaintiff because, in their view, that is what "the wage deduction statute requires." [90] at 20-21, ¶¶ 6-7. Accepting for present purposes the accuracy of Defendants' interpretation of state law, the wage deduction statute must give way to contrary federal law under a straightforward application of the Supremacy Clause (as explained above). Therefore, the Court cannot conclude that Freedman had "procedures reasonably adapted to avoid" communicating directly with debtors who Freedman knows to be represented by counsel. See *Portalatin*, 125 F. Supp. 3d at 814; cf. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 604–05 (2010) ("the bona fide error defense in § 1692k(c) does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the requirements of that statute"); *Leeb v. Nationwide Credit Corp.*, 806 F.3d 895, 898-99 (7th Cir. 2015) (debt collector's violation of the

FDCPA, based on its failure to cease collection of a debt after consumer disputed debt, was not excused by bona fide error defense because, even if she did not intend to violate the FDCPA, debt collector's employee intentionally sent the letter, sending the letter was not the result of a clerical or factual mistake, and debt collector failed to show that it maintained procedures reasonably adapted to avoid errors that could result in a violation of the FDCPA).

### 4. Whether PRA Is Also Liable for Violation of 15 U.S.C. § 1692c(a)(2) Based on Freedman's Violation of that Provision

Plaintiff seeks to hold PRA vicariously liable for the FDCPA violations of Freedman, its attorney. The Court's analysis of PRA's vicarious liability focuses on Freedman's mailing of the wage deduction notice to Plaintiff, rather than Plaintiff's counsel, since this is the only action that the Court has determined constituted a violation of the FDCPA.

In its affirmative defenses to Plaintiff's complaint, PRA asserts that it relied on Freedman not to communicate directly with consumers who are represented by attorneys. And in their motion for summary judgment, Defendants argue that PRA cannot be held liable for Freedman's violations of the FDCPA because "[a] principal is not liable for actions an agent takes in direct contradiction to the principal's direction." [89] at 31. In response, Plaintiff asserts that "[m]any courts have recognized that a company may be held vicariously liable for the collection activities of attorneys working on its behalf," and that PRA should be held vicariously liable for Freedman's FDCPA violations because "PRA exercised control over Freedman, its attorney, and authorized and ratified its actions." [75-1] at 23-24 (citing *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1516 (9th Cir. 1994); *Scally v. Hilco Receivables, LLC*, 392 F. Supp. 2d 1036, 1039 (N.D. Ill. 2005); *Randle v. GC Servs., L.P.*, 25 F. Supp. 2d 849, 851 (N.D. Ill. 1998); *Randle v. GC Servs., L.P.*, 25 F. Supp. 2d 849, 851 (N.D. Ill. 1998)).

The Seventh Circuit has recognized that "[a] debt collector should not be able to avoid liability for unlawful debt collection practices simply by contracting with another company to do what the law does not allow it to do itself." *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325 (7th Cir. 2016). Thus, "the FDCPA has utilized the principle of vicarious liability," *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000), and "[m]any courts have recognized that a company may be held vicariously liable for the collection activities of attorneys working on its behalf." *Schutz*, 465 F. Supp. 2d at 875. One important limitation on this principle is that "[i]ndividuals who do not otherwise meet the definition of 'debt collector' cannot be held liable under the act." *Pettit*, 211 F.3d at 1059 (citing *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir. 1996); *Fox*, 15 F.3d at 1516; *Transamerica Fin. Servs., Inc. v. Sykes*, 171 F.3d 553, 554 n.1 (7th Cir. 1999)).

In this case, it is undisputed that both PRA and Freedman are "debt collectors." Therefore, PRA may be vicariously liable for the acts of Freedman, assuming Freedman was acting as PRA's agent for purposes of the wage deduction notice. See *Pettit*, 211 F.3d at 1059-60.

The next step in determining whether PRA should be held vicariously liable for Freedman's violation of § 1692(a)(2) is to determine if PRA established a principal-agent relationship with Freedman with regard to the wage deduction notice. See *Schutz*, 465 F. Supp. 2d at 877. Here, PRA concedes that Freedman was acting as its agent, but argues (without any supporting legal citation) that it cannot be held liable for actions that PRA took "in direct contradiction to the principal's direction." [89] at 31. The problem with PRA's argument, apart from its lack of legal support, is that it does not identify any specific direction that PRA provided to Freedman concerning contacting a debtor who is represented by counsel. The Court is not

persuaded that Freedman's broad agreement to comply with the FDCPA (see [76-3] at 8) is sufficient to disclaim any responsibility that PRA may have for Freedman's FDCPA violations. Instead, "it is fair and consistent with the [FDCPA] to require a debt collector who is independently obliged to comply with the Act to monitor the actions of those it enlists to collect debts on its behalf." *Janetos*, 825 F.3d at 325.

In addition, PRA's Retainer Agreement gives it the right to review and approve Freedman's letters, notices, forms, and other documents at PRA's sole discretion. [76-3] at 8, ¶ 2(g). Because PRA had both the right and the opportunity to ensure that Freedman's letters complied with § 1692(a)(2), the Court finds it appropriate to hold PRA liable for Freedman's violation of § 1692(a)(2) and grants summary judgment in favor of Plaintiff and against PRA on Plaintiff's claim for violation of that provision. See *Janetos*, 825 F.3d at 325-26 (reversing district court's decision, on cross-motions for summary judgment, that creditor (who was itself a debt collector) was not vicariously liable under the FDCPA for letters that its debt collector drafted and sent on its behalf and holding as a matter of law that the creditor was vicariously liable for its debt collector's violation of § 1692g(a)(2)). Cf. *Schultz*, 465 F. Supp. 2d at 877 (debt collector that owned debt had principal/agent relationship with debt collection agency that it retained to collect debt, with respect to collection letters sent by agency, and thus was potentially vicariously liable for, and not entitled to summary judgment on, FDCPA claims based on collection letters sent by the debt collection agency; although owner did not draft or mail letters, its contract with agency reserved its right to control their content, and gave it access to copies of letters used by agency).

**IV.     Conclusion**

For the reasons stated above, the Court grants in part and denies in part Plaintiff's motion for summary judgment [75] and grants in part and denies in part Defendants' cross-motion for summary judgment [89].   Summary judgment is granted in favor of Plaintiff and against Defendants on Plaintiff's claim that Freedman's March 20, 2014 wage deduction notice violated 15 U.S.C. § 1692c(a)(2).   Summary judgment is granted in favor of Defendants and against Plaintiff on (1) Plaintiff's claim that Freedman's February 13, 2014 letter to Plaintiff's counsel violated 15 U.S.C. §§ 1692e, 1692e(5), 1692(e)(10), 1692f and 1692f(1); and (2) Plaintiff's claim that Freedman's March 20, 2014 wage deduction notice violated 15 U.S.C. §§ 1692e, 1692e(5), 1692(e)(10), 1692f and 1692f(1).

Count II of Plaintiff's complaint, a claim against Defendant Freedman for abuse of process, remains pending.   This case is set for status hearing on October 19, 2016 at 9:00 a.m.

Dated: September 29, 2016

_____
Robert M. Dow, Jr.
United States District Judge