# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BRENDA WASHINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 14-cv-3854 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| PORTFOLIO RECOVERY ASSOCIATES, LLC and FREEDMAN ANSELMO LINDBERG, LLC, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

On September 29, 2016, the Court granted summary judgment in favor of Plaintiff on her claim that Freedman's March 20, 2014 wage deduction notice violated 15 U.S.C. § 1692c(a)(2) and in favor of Defendants on (1) Plaintiff's claim that Defendant Freedman's February 13, 2014 letter to Plaintiff's counsel violated 15 U.S.C. §§ 1692e, 1692e(5), 1692(e)(10), 1692f and 1692f(1); and (2) Plaintiff's claim that Defendant Freedman's March 20, 2014 wage deduction notice violated 15 U.S.C. §§ 1692e, 1692e(5), 1692(e)(10), 1692f and 1692f(1). See [99]. Both Plaintiff and Defendants move for reconsideration of parts of the Court's summary judgment order. See [111], [115]. For the reasons explained below, both motions for reconsideration [111], [115], are denied. This case is set for status hearing on July 25, 2017 at 9:45 a.m.

### I. Background

The full background of this case is set forth in the Court's summary judgment order, knowledge of which is assumed here. See [99] at 2-5. Facts relevant to resolving the parties' motions are set forth in the analysis below.

## II. Legal Standard

Rule 59(e) of Federal Rules of Civil Procedure allows a party to direct the court's attention to a "manifest error of law or fact or to newly discovered evidence." *United States v. Resnick*, 594 F.3d 562, 568 (7th Cir. 2010). "A 'manifest error' occurs when the district court commits a 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Burritt v. Ditlefsen*, 807 F.3d 239, 253 (7th Cir. 2015) (quoting *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000)).

## III. Analysis

### A. Plaintiff's Motion for Reconsideration

On February 13, 2014, Freedman sent a letter to Plaintiff's attorney stating the following:

> Pursuant to your request, we enclose a copy of the contract and/or payment history and/or supporting documentation to validate this particular issue. Please note that the original creditor is GE CAPITAL RETAIL BANK at PC BOX 960061, ORLANDO, FL 32896-0061, my client [is] now the assignee of this particular creditor. After your review, I invite you to contact our office in hopes of amicable resolution of this matter without further inconvenience to your client. Further, as of the date of this letter, the balance claimed is $1,035.60. *Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day your client may pay could be greater.* Hence, if your client pays the amount shown above, an adjustment may be necessary after we receive your client's check, in which event we will inform you before depositing the check for collection. It is important that you contact this office regarding this account.

[94-1] at 2 (emphasis added).

Plaintiff argues that the Court erred by granting summary judgment for Defendants on her claim that the letter violated 15 U.S.C. §§ 1692e, 1692e(5), 1692(e)(10), 1692f and 1692f(1) by falsely representing that Defendants could impose late charges on Plaintiff's debt when, as a matter of law and contract, they could not.

2

15 U.S.C. §§ 1692f and 1692f(1) prohibit "[a] debt collector [from] us[ing] unfair or unconscionable means to collect or attempt to collect any debt," including "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) *unless such amount is expressly authorized by the agreement creating the debt or permitted by law*." (Emphasis added.) 15 U.S.C. §§ 1692e, 1692e(5), and 1692(e)(10) prohibit the use of "any false, deceptive, or misleading representation or means in connection with the collection of debt," including "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken," and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

Plaintiff's first argument on reconsideration is that under Section 1692(f)(1), the burden was on Defendants to show that its late charges were "expressly authorized by the agreement creating the debt or permitted by law." [115] at 3. In support of her argument, Plaintiff relies on the general proposition set forth in *Fed'l Trade Comm'n v. Morton Salt Co.*, that "the burden of proving justification or exemption under a special exception to the prohibitions of a statute generally rests on one who claims its benefits." 334 U.S. 37, 44–45 (1948) (interpreting antidiscrimination provision of Robinson-Patman Price Discrimination Act). Plaintiff also relies on a Third Circuit case interpreting another section of the FDCPA. See *Evankavitch v. Green Tree Servicing, LLC*, 793 F.3d 355, 362–63 (3d Cir. 2015) (debt collector has burden of proving exemption from 15 U.S.C. § 1692b(3), which prohibits a debt collector from "communicating with any person other than the consumer for the purpose of acquiring location information about the consumer . . . more than once unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information"). The Court is not

persuaded to follow *Evankavitch* because it is inconsistent with Seventh Circuit case law addressing who bears the burden of proving that the "unless" clause of Section 1692f of the FDCPA applies. In *Bentrud v. Bowman, Heintz, Boscia & Vician, P.C.*, the Seventh Circuit held that the debtor failed to meet the burden imposed on it under Sections 1692f of proving that the debt a law firm was attempting to collect was not authorized by the agreement that created the debt. 794 F.3d 871, 876-77 (7th Cir. 2015) (citing *Hess v. Kanoski Bresney,* 784 F.3d 1154, 1159 (7th Cir. 2015)).

Although the Court did not grant summary judgment against Plaintiff on her Section 1692f claim based on her failure to submit any evidence or rebut Defendants' evidence concerning whether late charges are authorized by applicable law (instead finding it unnecessary to resolve the issue), it could have ruled against Plaintiff on that basis. As the Court concluded in its summary judgment opinion, Defendants concede that the agreement creating the debt does not expressly authorize late charges. But, the only evidence or argument submitted concerning whether late charges are permitted by applicable law was the deposition testimony of a former Freedman employee, Ms. Nilsen, to the effect that a court may *sua sponte* impose penalties on debtors, which should be considered equivalent to late charges. See [79] at 13 (Nilsen testimony that "[w]e have had sanction orders entered [by courts] where if [debts] were not paid within a time, the sanction order would increase"). Plaintiff has never provided any substantive response to Ms. Nilson's testimony; nor has Plaintiff addressed more generally what the term "late charges" encompasses, or cited applicable rules or case law concerning the availability (or unavailability) of late fees. Plaintiff asserts that the Court can take judicial notice of the underlying judgment order, which "does not allow or even reference 'late charges' or any extra amount that may be added to the debt." [115] at 4 (citing [75-2], ¶ 17). But the judgment order

[94-6] does not answer the question of whether late charges are authorized by law. It is a simple one-page form default judgment for $803.60, plus unspecified costs. The judgment order does not mention late fees, but it also does not mention post-judgment interest, and Plaintiff does not dispute that Defendants had a right to add interest to the judgment.

Plaintiff's second argument is that the Court erred by declining to apply the "unsophisticated consumer" standard to Freedman's dunning letter to Plaintiff's lawyer. [115] at 4-5. Plaintiff argues that "when a statement is false on its face, the unsophisticated consumer standard applies even to communications with lawyers," because "[a] false statement of fact in a dunning letter may be as difficult for a lawyer to see through as a consumer." *Id*. (citing *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 775 (7th Cir. 2007)). According to Plaintiff, "to expect a competent attorney . . . to discover" that late charges may not "be imposed under law or agreement" is "too much of a burden." [115] at 5.

Plaintiff misstates *Evory* and its application to this case. *Evory* recognizes that "the 'unsophisticated consumer' standard is inappropriate for judging communications with lawyers," just as "it is inappropriate to fix a physician's standard of care at the level of that of a medical orderly." 505 F.3d at 774. *Evory* explains that because "most lawyers who represent consumers in debt-collection cases are knowledgeable about the law and practices of debt collection" and "those who are not should be able to inform themselves sufficiently to be able to represent their consumer clients competently," "a representation by a debt collector that would be unlikely to deceive" (or mislead) "a competent lawyer, even if he is not a specialist in consumer debt law, should not be actionable." *Id*. at 774-75. *Evory* recognizes that "[a] *false* claim of *fact* in a dunning letter"—such as the amount of debt—"*may* be as difficult for a lawyer to see through as a consumer." *Id*. at 775 (emphasis added). But this does not mean that false statements of fact to

5

attorneys are measured under the "unsophisticated consumer" standard. The Seventh Circuit has made clear, after *Evory*, that "the 'competent attorney' standard applies" to communications made to attorneys "regardless of whether a statement is false, misleading or deceptive." *Bravo v. Midland Credit Management, Inc*., 812 F.3d 599, 603 (7th Cir. 2016) (citing *Evory*, 505 F.3d at 775).

Further, Freedman's statement that "because of interest, late charges, and other charges that may vary from day to day, the amount due on the day your client may pay could be greater" is not a "statement of fact" in the same manner that a misrepresentation of "the unpaid balance of the consumer's debt" would be. *Evory*, 505 F.3d at 775. While a debtor's attorney may not have access to the debt collector's tabulation of the debtor's current unpaid balance, he or she should be capable of reviewing the governing agreement[1] and applicable law and making a legal assessment of whether either authorizes late charges. *See id*. at 774 (competent lawyers "should be able to inform themselves" about "the law and practices of debt collection").

Plaintiff compares this case to *Captain v. ARS Nat'l Services, Inc*., 636 F. Supp. 2d 791 (S.D. Ind. 2009), which according to Plaintiff held that a "false threat made to a consumer's attorney . . . to add a $15 per day late charge [was] deceptive notwithstanding the attorney's knowledge that the charge was illegal." [115] at 10 (citing *Captain*, 636 F. Supp. 2d at 796-97). But *Captain* focused on the debt collector's representation that it would impose late charges, not the legality of the debt collector's threat. Captain found the debt collector's statement to be misleading "regardless of [the] legality" of the threatened late charges because the debt collector's agent expressly told the attorney that "it would start imposing a $15 per day charge on [the debtor's] account if it were not paid in full within two weeks," which would "mislead a competent lawyer about whether the company actually planned to add the charge." *Id*. at 797;

---
[1] Freedman's letter notes that it is enclosing the agreement that created the debt.

6

see also *id*. at 793 (explaining that the debtor's attorney called the debt collector and the parties dispute whether the debt collector's agent told the attorney that it would impose late fees). Freedman's letter, by contrast, does not say that Freedman intended to add late charges, identify the amount of any late charges, or provide a deadline by which late charges would be imposed. Nor is there any allegation that Plaintiff's attorney called Freedman (as the letter encouraged him to do) to discuss potential late charges. Cf. *Paz v. Portfolio Recovery Assocs., LLC*, 2016 WL 3551662, at *2 (N.D. Ill. June 30, 2016) (explaining that "[t]he court in *Captain* held the statement made by the debt collection agency's employee that a $15 daily charge would be added to the account, not the initial letter, 'would, at the very least, mislead a competent lawyer," whereas in *Paz* "plaintiff's counsel made no such follow-up phone call and was not told affirmatively by the debt collection agency that the debt would be reported to the credit reporting agencies as unpaid").

This case is similar to *Bravo v. Midland Credit Mgmt., Inc.*, 2014 WL 6980438 (N.D. Ill. Dec. 9, 2014), *aff'd*, 812 F.3d 599 (7th Cir. 2016), in which a debt collector represented to a debtor's attorney not 'the *amount* of the [debtor's debt], but that she had debts *at all*." *Id*. at *5 (emphasis in original). The debts at issue had been settled in full under an earlier settlement agreement. The district court concluded that "[i]t would not have taken an expensive or extensive investigation—or even any investigation at all—for a competent lawyer to know Bravo owed no debts and that the letters were false," and therefore granted a motion to dismiss the debtor's Section 1692e claim. *Id*. (distinguishing *Captain* on the basis that "there was no reason for [the debtor's attorney] to 'take seriously' the falsehood in [the debt collectors'] letters[,] which, [in contrast to *Captain*,] contained no threats at all"). The Seventh Circuit affirmed, concluding that a competent attorney would have been able to determine whether his client

7

continued to owe a debt after it was settled in full and would therefore not have been deceived by letters seeking to collect the debt. *Bravo*, 812 F.3d at 603.

Plaintiff also relies on *Ruth v. Triumph Partnerships*, 577 F.3d 790 (7th Cir. 2009), and *Lox v. CDA, Ltd.*, 689 F.3d 818 (7th Cir. 2012), for the proposition that Freedman's letter's reference to late fees, although conditional, was still plainly deceptive or misleading, and thus Plaintiff was not required to offer any extrinsic evidence that a competent attorney who received the letter would believe that Plaintiff owed late fees. But *Ruth* and *Lox* (neither of which concerned late fees) involved letters written directly to debtors, not their lawyers, and applied the unsophisticated consumer standard. See *Ruth*, 577 F.3d at 801; *Lox*, 689 F.3d at 825. Obviously, the Court will not presume that an unsophisticated consumer has "knowledge of relevant legal precedent," *Lox*, 689 F.3d at 825, but competent attorneys should be able to familiarize themselves with governing law and review and understand a contract. Further, *Lox* recognizes that even "a statement made by a debt collector that is technically false but in no way misleading does not run afoul of § 1692e." *Id*. at 822. In this case, Freedman's "letter itself does not plainly reveal that it would be confusing to a significant fraction of" competent attorneys, and therefore Plaintiff was required to "come forward with evidence beyond the letter and beyond his own self-serving assertions that the letter is confusing in order to create a genuine issue of material fact for trial," which she failed to do. *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 415 (7th Cir. 2005).

The Court therefore concludes that it did not commit manifest error by holding that Defendants were entitled to summary judgment on Plaintiff's Section 1692e and 1692f claims based on Freedman's February 13, 2014 letter to Plaintiff's counsel. Plaintiff's motion for reconsideration is denied.

### B. Defendants' Motion for Reconsideration

The following facts are relevant to Defendants' motion for reconsideration: Plaintiff's attorney began representing Plaintiff after the Cook County Circuit Court entered a default judgment against Plaintiff in the amount of $803.60 plus costs. [90] at 9. On December 27, 2013, Plaintiff's attorney sent Freedman a letter stating that he was representing Plaintiff in the Cook County action and that Plaintiff "disputes this debt and intends to fully participate in the case." [90] at 9. He also entered appearances and filed a motion to vacate the default judgment that had been entered against Plaintiff. *Id.* However, he did not serve Defendants with his appearance, the notice of motion to vacate, or the motion to vacate. [94-1] at 1. Plaintiff's attorney was successful in having the default judgment vacated. On March 20, 2014, Freedman sent to Plaintiff (rather than to her attorney) a wage deduction notice. [90] at 12-13. Defendants concede that, as of the date Freedman sent the wage deduction notice, Freedman knew that Plaintiff was being represented by counsel. [90] at 14.

The Court granted summary judgment for Plaintiff on her claim that Freedman's March 20, 2014 wage deduction notice violated 15 U.S.C. § 1692c(a)(2) because the notice was sent to Plaintiff directly, rather than to Plaintiff's attorney, at a time when Defendants knew that Plaintiff was represented by counsel. 15 U.S.C. § 1692c(a)(2) provides that, "[w]ithout the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a

9

communication from the debt collector or unless the attorney consents to direct communication with the consumer."

Defendants' first argument on reconsideration is that the Court did not adequately consider Section 1692c's exception for communications sent with "the express permission of a court of competent jurisdiction." 15 U.S.C. § 1692c(a)(2). According to Defendants, their wage deduction notice was "sent consistent with the express permission of a court of competent jurisdiction," because "[t]he Illinois Code of Civil Procedure, Illinois Supreme Court Rules and Cook County Local Rules undoubtedly provide express permission to directly communicate with a debtor who is allegedly represented by counsel." [111] at 5, 7. Defendants also compare this case to *Spearman v. Tom Wood Pontiac-GMC, Inc*., 2002 WL 31854892 (S.D. Ind. 2002), which they claim holds that "rules that allow service on an individual [are] express permission from a court under § 1692(c)." [111] at 8.

The Court is not persuaded by Defendants' argument that they were expressly authorized by a court of competent jurisdiction to send the wage garnishment notice directly to Plaintiff. As an initial matter, Defendants misread *Spearman*. *Spearman* did not involve a claim under Section 1692(c)(a)(2), and merely stated in dicta that "*[p]erhaps* the court rules that allow service of process on an individual *might* be considered express permission (as distinguished from particularized or case-specific permission) for . . . a communication with the consumer" serving the consumer with process. *Spearman*, 2002 WL 31854892, at *3 (emphasis added). Further, the rules cited by Defendants do not, under the facts of this case, constitute permission to communicate with Plaintiff directly. Illinois Supreme Court Rule 11(a) provides that "[i]f a party is represented by an attorney of record, service shall be made upon the attorney. Otherwise service shall be made upon the party." Ill. Sup. Ct. Rule 11(a). Likewise, Cook County Local

Rule 2.1 requires litigants to serve parties directly in the absence of an attorney of record. But according to Defendants, the debtor is not a party to the garnishment action, and service of the wage garnishment notice is governed by the Illinois Code of Civil Procedure and the "last known address" language. See [111] at 8-9 (asserting that the wage garnishment action "proceeds against the employer, not the judgment debtor" and that "there is no need for the judgment debtor to appear in the proceeding"). Thus, according to Defendants' own argument, the Illinois court rules do not apply and cannot constitute "express permission of a court of competent jurisdiction" to communicate directly with a debtor whom the creditor knows to be represented by counsel. 15 U.S.C. § 1692c(a)(2).

The Court also is not convinced that the Illinois Code of Civil Procedure authorized Defendants to send the wage garnishment notice directly to Plaintiff, rather than to her attorney. Defendants provide no legal authority for their argument that 735 ILCS 5/12-805's reference to the "debtor's last known address" must, in all cases, refer to the debtor's home address. In cases like this one, where the debt collector admittedly knows that the debtor is being represented by counsel in relation to the debt that it seeks to collect, there is no reason for the debt collector to circumvent the debtor's attorney and communicate with the debtor directly. Defendants argue that "[i]t would be illogical to have the Code mandate mailing to the judgment debtor's last known address, but allow the creditor to ignore that and mail it to an attorney not of record." [111] at 6. In fact, Plaintiff's attorney *was* the attorney of record; he filed an appearance, although he did not serve it on Defendants. But ultimately this is irrelevant, because Defendants had actual notice that Plaintiff's attorney was representing Plaintiff and that counsel's address should be used for communications concerning the debt. Indeed, Freedman had communicated

11

directly with Plaintiff's attorney less than a month before it sent Plaintiff the wage garnishment notice, and had the attorney's contact information in its file.

Further, Defendants offer no support for their position that an official attorney appearance is necessary in order for Section 1692c(a)(2) to require communications to be made to the debtor's attorney. Defendants fail to address the precedent that the Court cited in its summary judgment decision, in which violations of § 1692c(a)(2) were found based on attorneys' informal communications to debt collectors, rather than official appearances in court proceedings. See, *e.g.*, *Buckley v. Afni, Inc.*, 133 F. Supp. 3d 1140, 1149-50 (S.D. Ind. 2016) (concluding on summary judgment that debt collector violated § 1692c(a)(2) when it directly communicated with consumer after being notified that she was represented by counsel, where it was undisputed that debt collector received letter from consumer's attorney stating that he was representing her for all debts and that after receiving letter debt collector directly sent consumer a collection letter); *Yarney v. Ocwen Loan Servicing, LLC*, 929 F. Supp. 2d 569, 579 (W.D. Va. 2013) (debt collector violated § 1692c(a)(2) by communicating directly with a consumer debtor, through collection letters and phone calls, after debtor's counsel left voicemail for debt collector requesting that it not contact consumer debtor directly and provided contact information to debt collector); *Tong v. Capital Mgmt. Servs. Grp., Inc.*, 520 F. Supp. 2d 1145, 1148 (N.D. Cal. 2007) (letter and attachment sent to debt collector by attorney representing cardholder contained enough information to provide collector notice that plaintiff was represented by counsel, even though cardholder's first name was not on the face of the attorney's representation letter, where the letter included the cardholder's address and account number, and attorney had attached debt collector's second notice to the letter).

Defendants' second argument on reconsideration is that, "[i]n considering whether the FDCPA preempts the Illinois garnishment law," the Court incorrectly "concluded that the FDCPA offered greater protection than state law." [111] at 8.[2] However, the Court did not decide the preemption question, instead concluding that there was not an irreconcilable conflict between the FDCPA and the Illinois Code of Civil Procedure provision authorizing mailing of a wage garnishment notice to the debtor's "last known address." Even if the Court had based its decision on the FDCPA's preemption clause, Defendants' argument that the garnishment law provides greater protection to debtors than the FDCPA is not persuasive. Defendants assert that service directly on the debtor is necessary because an attorney's representation ends upon the entry of judgment and the wage garnishment proceedings may not occur until long after the entry of judgment against the debtor; thus, Defendants would not know in such cases whether the debtor could actually be reached through the attorney who previously appeared on his or her behalf. But that is not the case here; instead, Defendants concede that at the time they sent the wage garnishment notice they knew that Plaintiff was represented by counsel. Under different facts, Defendants' argument might have more persuasive force; but in those cases, Defendants either would not know that the debtor's "last known address" is with the debtor's attorney (and therefore would not run afoul of Section 1692(c) in the first place) or could fall back on the bona fide error defense. See 15 U.S.C. § 1692k(c).

Defendants also argue that Illinois' wage garnishment law provides greater protections to debtors than the FDCPA does because it is more important for the debtor, rather than his or her attorney, to receive notice of the wage garnishment notice. According to Defendants, "there is nothing for the attorney to do" and "no adverse action that can be taken against the judgment

---

[2] The FDCPA's preemption clause provides that "a State law is not inconsistent with [the FDCPA] if the protection such law affords any consumer is greater than the protection provided by this subchapter." 15 U.S.C. § 1692n.

debtor." [111] at 9.  Defendants ignore the reality that the wage garnishment action will result in money being taken directly out of the debtor's paycheck, which a debtor would obviously view as adverse to his or her interests.  And an attorney could certainly be useful in a garnishment proceeding—for instance, by informing the creditor of any reasons why the debtor's wages should not be garnished, and explaining the garnishment proceedings and their implications to the debtor.

Therefore, Defendants fail to convince the Court that it committed manifest error by granting summary judgment for Plaintiff on her Section 1692c(a)(2) claim.  Defendants' motion for reconsideration is denied.

## IV. Conclusion

For the reasons stated above, Plaintiff's motion for reconsideration [115] and Defendants' motion for reconsideration [111] are both denied.  Count II of Plaintiff's complaint, a claim against Defendant Freedman for abuse of process, remains pending.  This case is set for status hearing on July 25, 2017 at 9:45 a.m.

Dated: July 11, 2017

_____
Robert M. Dow, Jr.
United States District Judge